## GENERAL MOTORS ACCEPTANCE CORP v KEHNERT et

Municipal Court of Lakewood

Decided Nov 22, 1938

L. E. Richards, Cleveland, for plaintiff.
J. J. Wodisky, Cleveland, for defendant.

## OPINION

By WILLIAMS, J.

The facts sufficient to present the question before the court are as follows:

In November, 1937, Helen Kehnert purchased an automobile, and in part payment thereof gave her note in a certain amount secured by a chattel mortgage, duly executed, upon said automobile. This deferred balance, so evidenced, was to be paid in monthly installments. Subsequently the note and mortgage was purchased by General Motors Acceptance Corporation. The mortgage was duly recorded in the recorder's office of Cuyahoga County, on November 27, 1937.

Prior to the purchase of this automobile, to-wit: In October, 1937, Helen Kehnert had moved into a suite in the Lake Shore Hotel, Inc., the hotel operated by this company being in the City of Lakewood. Thereafter in 1938, the exact time not being material, Helen Kehnert left the Lake Shore Hotel, owing a balance on her account of $289.78, and also, voluntarily or otherwise, left the automobile, hereinbefore mentioned, in the garage attached to and operated by the hotel.

During this same period she had failed to meet the monthly payments due under the note and mortgage, and by reason of her default in this respect, had breached the conditions of said mortgage. Thereafter on October 1, 1938, General Motors Acceptance Corporation filed an action in replevin in this court, the purpose of which was to obtain an order for the possession of the automobile in question, which, from the time Helen Kehnert had left the hotel, had remained in the garage of said hotel and in its custody and control. The aforesaid action having been filed, the Lake Shore Hotel, Inc., was granted leave to be made a party defendant, and filed its answer, alleging that it had impressed an innkeeper's lien upon the said automobile by reason of the provisions of §5984 GC.

Upon these facts the court is called upon to determine whether the mortgage lien of General Motors Acceptance Corporation is prior to the innkeeper's lien of the Lake Shore Hotel, Inc., or vice versa. The court has had the benefit of well prepared and exhaustive briefs filed by counsel for the General Motors Acceptance Corporation and the Lake Shore Hotel, Inc., the defendant Helen Kehnert not being represented by counsel.

On the one hand it is argued, with authority to support the conclusion, that the lien created by the filing of a chattel mortgage takes precedent. On the other, with authority to support a contrary conclusion, counsel urges upon the court the conclusion that the innkeeper's lien is prior to the mortgage lien. Independently of the briefs of counsel, the court has made some research on its own account.

Chapter 13, comprising §§5981 to 5986 GC, comprise a statutory law of Ohio with relation to innkeepers. Specifically, an innkeeper's lien is predicated upon §5984 GC. So much of that section as is pertinent is here quoted:

"Such innkeeper shall have a lien on the baggage and other property in and about such inn belonging to or under the control of his guests or boarders for the proper charges due him for their accommodation, board and lodging, for money paid for or advanced to them, and for such other extras as are furnished at their request. The innkeeper may detain such baggage and other property until the amount of such charge is paid * * *".

So far as the court can discover, the leading case in Ohio construing this statute is reported in 30 O.C.C. page 691, the case of **Joseph S. Thomas v Remington Typewriter Company.** This case is stronger even than the one under consideration. Here is a brief statement of the undisputed facts in that case.

The Remington Typewriter Company delivered a certain typewriter to one Wendleborn upon the representation by him that he was acting as agent of an amusement company, that the amusement company desired to rent a typewriter, and that he was fully authorized in the premises. The Remington Company was to receive $5.00 per month for the rental of its machine, but no rent was ever paid. Wendelborn took the typewriter to his hotel where he was a guest, stating to the proprietor of the hotel that the typewriter belonged to him. A few days later he left the hotel without paying a bill of $40.00 for board and lodging, leaving the typewriter in the possession of the hotel. An action in replevin was brought by the Remington Company to recover possession of its typewriter which the hotel was retaining under an innkeeper's lien. It developed that the statements by Wendelborn to the Remington Company, that he was authorized to rent this typewriter, as well as the statement to the hotel that he was the owner thereof, were false and utterly untrue.

Upon hearing in the Common Pleas Court the court instructed the jury to return a verdict for the Remington Company and entered judgment thereon. Thereafter the case was carried to the Circuit Court, and the action of the lower court was reversed. The Circuit Court, in discussing the statute, concluded its opinion as follows:

"The words 'under the control of the guest' we think should be construed in the light of the common law decisions and while the title to the typewriter in question may not have passed to Wendelborn, yet the innkeeper had a lien on the typewriter superior to the right of the defendant in error to retake possession of the same."

I make bold to suggest that the situation in this case transcends that in which Mr. Bumble found himself in Dickens' "Oliver Twist." Threatened with loss of office for having been an accomplice to a fraud, he tried to excuse himself on the ground that:

"'It was all Mrs. Bumble. She would do it,' urged Mr. Bumble; first looking around to ascertain that his partner had left the room.

"'That is no excuse,' replied Mr. Brownlow. 'You were present on the occasion * * * and * * * the law supposes that your wife acts under your direction.'

"'If the law supposes that,' said Mr. Bumble, squeezing his hat emphatically in both hands, 'the law is a ass—a idiot. If that's the eye of the law, the law is a bachelor; and the worst and the worst I wish the law is that his eye may be opened by experience'."

Here was a situation where a piece of property had been obtained by a false representation. Unquestionably the title remained in the Remington Typewriter Company, and yet the court laid down the law that under such circumstances the innkeeper had a property right in that typewriter superior to that of the actual owner thereof. Let us pause for a moment to wonder if Mr. Remington squeezed his hat emphatically and said "If the law supposes that—the law is a ass—a idiot."

And yet the law as established by this case remains unchanged in this state to this day. By the decision of the Circuit Court Wendelborn was permitted to do by indirection what he could not have done by direction. Query; under authority of this case, can a thief discharge his obligations to an innkeeper by leaving stolen property in the hotel when he leaves an unpaid account? If the answer to this question is in the affirmative, it is neither good sense nor good law.

Suppose, for further illustration, two guests occupied separate quarters in a hotel, one prompt in the payment of his obligations, the other not. Suppose further—the paying guest, for good and sufficient reasons, had taken some of his property into the room of the other, and while it so remained, the non-paying guest left an unpaid account with the hotel. The hotel impresses an innkeeper's lien on the property in the room of the absconding guest, but actually belonging to the paying guest. By what process of legal reasoning or common sense can we conceive of the hotel having a prior claim upon such property as against the actual owner thereof? Certainly no layman would understand this as being a good rule of law, nor do I feel that it would be generally understood by lawyers as being such today.

It seems to me that the Circuit Court in thus establishing the law for Ohio, failed to take into consideration the probable and, to me, evident intention of the Legisla-

.ture when this section was made a part of the statutory law of this state. Clearly the intent was to subject the property of the guest to the satisfaction of an unpaid account and not the unquestioned property of other wholly innocent persons. Does not the statute provide that property subject to a lien of this kind shall **belong** to the guest? True, the statute says "belonging to or under the control of". But by any reasonable construction, these words "under the control of" cannot mean other people's property under the control of ▮▮▮ the guest, but rather property **belonging** to a guest, under the control of the guest. As I would construe the statute, the controlling language would be the words "belonging to". Webster's New International Dictionary, Second Edition, defines the word "be-▮▮▮ long", "to be the property of." Notice that the statute does not provide for the innkeeper having a lien on any property which the guest may have, but does definitely and distinctly provide for such lien only on property **"belonging to"**. The subsequent words "under the control of" are merely limiting language which distinguish property of the guest "in and about such inn", from property which the guest may own elsewhere.

Perhaps the reasoning of this court can be more easily understood by the simple device of rearranging the language of the statute as follows:—

Such innkeeper shall have a lien on the baggage and other property under the control of his guests or boarders, in and about such inn, belonging to such guests or boarders for the proper charges due him, etc.

Under the common law it may have been advisable that an innkeeper be allowed a lien on any property for the reason that he was then an insurer of everything his guest brought into the inn. Since the enactment of the statutory law in Ohio relative to innkeepers, however, the liability of an innkeeper has been very much modified. Now, unless by agreement, the innkeeper is not obliged to receive certain property described in the statutes in excess of the value of $500.00. The statute reads "and shall not be liable for such property exceeding such value, whether received or not". The innkeeper is only responsible by statute for such property so received by him for a loss occasioned by theft or negligence. As to other property not described in the statute, instead of being an insurer, the statute says the liability of an innkeeper "shall be that of a depository for hire", and even then liability in terms of dollars is limited specifically by statute, unless the innkeeper has consented in writing to assume a greater liability. (§§5981-2-3 GC).

By statutory law in Ohio then, the common law responsibility of an innkeeper for the property of his guest has been changed materially, so that, as of today, I am of the opinion that a rule of law allowing an innkeeper to take the property of another in satisfaction of a claim owing to him by his guest, is unsound and fundamentally wrong. To hold that the chattel mortgage in this case is not a superior lien to that of the innkeeper, would be to hold that a party, without fault under the law, should answer for the loss of another, perhaps even for a debt criminally contracted, a debt occasioned by the act of the recovering party —in this case the extension of credit to a guest.

I can not believe this is the law. I can not believe that it should be the law, and yet under the doctrine of **stare** ▮▮▮ **decisis**, on authority of the case of Thomas v Remington Typewriter Co., supra, this court is obliged to hold that the innkeeper's lien takes priority over that of the chattel mortgage.

It would burden this opinion to unreasonable and unnecessary length to discuss the many cases cited by counsel and examined by this court, relative to other types of liens, such as warehouseman's, mechanic's and other artisans, in which the rule has been stated that a chattel mortgage lien takes priority when in point of time it is first. The principle announced in these cases should apply to the one at bar.

I trust this case will be carried to the Supreme Court so that we may have the benefit of its judgment on the subject matter of this law suit. In my humble opinion the law with relation to Innkeeper's Liens should be restated.

The formal entry of the court then will be to, and it does hereby dismiss the action in replevin filed by the plaintiff, General Motors Acceptance Corporation, and find on the allegations of the answer of Lake Shore Hotel, Inc. that it has a good and valid innkeeper's lien to the extent and amount of $289.78 (two hundred eighty-nine dollars & seventy-eight cents), with interest from June 1, 1938 at 6% per annum. The costs are assessed against the plaintiff.